DONALD J. CAMERON *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY
COMPANY.

November 22, 1889.

**Eminent Domain—Parcels not Considered One Tract.**—The owner of a.
farm consisting of distinct parcels of land, separated by lands not owned
by him, and over which he has no private right of way, is not entitled to
have such separate parcels treated as one entire tract, for the purpose of
the assessment of damages for the taking (for railroad purposes) of land
in one only of such parcels.

Appeal by defendant from an order of the district court for Mower
county, *Farmer*, J., presiding, refusing a new trial after verdict of
$2,700 for plaintiff.

*Kingsley & Shepherd*, for appellant.

*Lovely & Morgan* and *Lafayette French*, for respondent.

DICKINSON, J.[1]  This is an appeal from an order refusing a new
trial, the cause having been tried in the district court upon an appeal
from the award of commissioners in proceedings to condemn land for
railroad purposes.  The land of the respondent consisted of a farm
of 455 acres in Mower county.  Long prior to this condemnation two
lines of railroad, operated by the appellant, had been established across
the farm, and the right of way therefor acquired.  One of these runs.
in a north and south direction, and is called the "Iowa & Minnesota
Division" of the appellant's road.  The other, running east and west,
is called the "Southern Minnesota Division."  These two lines crossed
each other at a junction called "Ramsey," on the respondent's farm.
The land sought to be appropriated through this proceeding consisted
in part of a tract of eight and a half acres, in triangular form, at the
junction of the two lines of road, being east of the Iowa & Minnesota
Division, and south of the Southern Minnesota Division.  The re-
spondent has owned this land since 1871, although he never acquired
the fee of the strip extending north and south across the farm, con--
stituting the line of the Iowa & Minnesota Division.  In the trial of

[1] Collins, J., took no part in this case.

the case evidence was received, against the appellant's objections, as to the amount of the injury to the *entire farm* resulting from the taking of the eight and a half acre piece east of the Iowa & Minnesota Division of the road; and a refusal of the court to charge as requested also presents the same legal question,—that is, whether, by reason of the separation of the farm into two parts by the intervening strip of land occupied by the railroad, running north and south, and the fee of which was never conveyed to the respondent, the lands comprising this farm must be treated as two separate and distinct tracts of land for the purpose of the assessment of damages.

It does not necessarily follow, from the fact that the western part of the farm, thus divided, may have been rendered less valuable by reason of the taking of the eight and a half acres out of that part of the farm east of the railroad, that compensation for such injury should be allowed. A land-owner may be injured by the exercise of the right of eminent domain, and still not be entitled to compensation. One in the vicinity of whose lands a railroad may be located may suffer a depreciation in the value of his lands, yet he cannot recover therefor. That does not constitute a taking or interference with his property. Nor is such a land-owner entitled to compensation for such injury, although he may have other lands which are actually taken for the public use. While the injurious consequences of such improvements, in the depreciation of the values of particular lands, may extend very far from the location of the railroad, the rule of compensation has been, and perhaps must be, upon grounds of necessity and expediency, somewhat more limited and definite. In this country it is generally confined to the particular tract of land the whole or a part of which is taken, damages being awarded only for the land taken, and for the resulting injury to the remainder of the same tract, without regard to other lands of the same owner. This is the established rule of compensation in this state; and even adjoining lands of the same owner, not properly a part of the tract taken, are not to be considered in the assessment of damages. *Minn. Valley R. Co.* v. *Doran,* 15 Minn. 179, (230;) *St. Paul & Sioux City R. Co.* v. *Murphy,* 19 Minn. 433, (500;) *Peck* v. *Superior Short Line Ry. Co.,* 36 Minn. 343, (31 N. W. Rep. 217;) and see *Wilcox* v. *St.*

*Paul & N. P. Ry. Co.,* 35 Minn. 439, 441, (29 N. W. Rep. 148.) While some difficulty may sometimes be experienced in determining whether, under the circumstances of particular cases, the lands in question are properly to be regarded as distinct tracts, or as parcels of one entire tract or body of land, the principle to which we have referred has not been departed from. It is true that in some cases parcels of land separated by a public highway, but used together as one property, have been treated as parts of the same body of land. *St. Paul & Sioux City R. Co.* v. *Murphy, supra*; *Sherwood* v. *St. Paul & Chicago Ry. Co.,* 21 Minn. 127; *Peck* v. *Superior Short Line Ry. Co., supra.* But there the ownership was continuous; the tracts were contiguous; the separation of the parts in question being not complete, but consisting only of the intervening public easement. The right to use the intervening land, to pass and repass, remained in the owner of the whole; and when, if ever, the public easement should be abandoned, the land-owner's rights in respect to the whole body of land would become unqualified.

The case here presented did not justify treating the lands east of the railroad and those west of it as one entire body of land. The most significant and controlling fact is that these parcels are physically separated by the intervening fee. In this respect they are as really separate and distinct tracts of land as if they had been miles apart, instead of perhaps a hundred feet. Different tracts of land, being in fact and physically separate and distinct, cannot, in general at least, be reasonably regarded as constituting one entire body of land, or be treated as such, from the fact that they may be under one ownership, and be profitably and appropriately used together for the same purpose. The not unusual fact that lands so separated are conveniently and most profitably used by the owner in conjunction, so as to contribute to a common purpose or end,—as in the case of a farm, with its necessary pasturage or timber-land, situate at a distance from the rest of the land used for farming purposes,—cannot justify treating parcels which are essentially and in their very nature distinct and separate, as though they were one continuous body of land. To do so would be to either disregard altogether, or at least to make a matter of secondary importance, what has always been re-

garded as the principal consideration in applying the rule of compensation; that is, the real and essential situation of the lands, whether they constitute one or several tracts. It would substitute a new rule, hitherto not recognized, for the rule which has long been regarded as the test of the right to compensation. If the respondent had a private right of way,—an easement,—over the railroad lands, connecting the separated parts of the farm, the case might be different. But we do not understand the evidence to disclose any such right. There was evidence possibly showing a license on the part of the owner of the intervening fee; but a mere license might be at any time revoked, and would give to the respondent no interest in the land. If it should be claimed that there had been a dedication of a public right of way over the railroad lands, that would not affect the question under consideration. It would not create any private right in this respondent in respect to the intervening fee. A public highway could at any time be discontinued and vacated without his consent; and the fact that disconnected, distinct tracts are accessible by means of a public highway would be insufficient to justify treating them as an entire tract.

Chapter 174 of the General Laws of 1887 does not affect the case. The first section, requiring railroad companies to construct farm-crossings, is by its terms restricted to railroads to be *thereafter* laid out, opened, or fenced. Section 2, authorizing the land-owner through whose farm a railroad has been constructed to construct a crossing over or under the railroad, for the passage of stock, would not seem to have been intended to apply to a case where, as in this case, the owner of the lands on either side had no property right in the land occupied by the railroad. It may be doubted whether, in such a case, the provisions of the act of 1887 could be deemed applicable for constitutional reasons.

There was error in the trial in the particular to which we have referred, and the order refusing a new trial must be reversed.